**In re E.R. FEGERT, INC., Debtor.**

**Dan O'ROURKE, Trustee, Appellant,**

v.

**CORAL CONSTRUCTION, INC.,**
**Shotwell Paving Co., Seabord**
**Surety, Appellees.**

**BAP Nos. EW–87–1096, 1210–MeASJ.**

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued July 24, 1987.

Resubmitted April 8, 1988.

Decided Aug. 8, 1988.

Gregory J. Jalbert, Southwell O'Rourke, Jalbert & Kappelman, P.S., Spokane, Wash., for appellant.

Bruce R. Boyden, Woeppel, Hoover & Boyden, Spokane, Wash., for appellees.

Before MEYERS, ASHLAND and JONES, Bankruptcy Judges *.

MEYERS, Bankruptcy Judge:

I

This case presents the issue of whether the Debtor's payments to two subcontractors constitute voidable preferences where in exchange, the subcontractors released their unsecured claims against the Debtor as well as their claims against a surety company. The Bankruptcy Court found that the Debtor's payments were exceptions under § 547(c)(1) of the Bankruptcy Code ("Code") and therefore were not voidable. We AFFIRM.

II

BACKGROUND

In May 1981, the United States Department of Transportation entered into a contract with the Debtor for the construction of 4.6 miles of a federally funded roadway in Oregon ("White River Road Contract"). The Debtor subsequently subcontracted some of the construction work out to Coral

---

* Judge Jones was assigned to this Panel by the Clerk upon the death of Judge Elliott. Each member of the Panel has reviewed the record and briefs, including those filed on the motion for rehearing, and no member of the Panel has called for further argument.

Construction, Inc. ("Coral") and Shotwell Paving Company ("Shotwell"). Coral and Shotwell apparently completed the work owed on the subcontracts, but the Debtor defaulted in its payments. Each of the creditors was forced to commence a lawsuit against the Debtor and Seabord Surety Company ("Seabord"). Seabord had issued a payment and performance bond on behalf of the Debtor pursuant to Title 40 of the United States Code ("Miller Act"). 40 U.S.C. §§ 270a–270d.

In February 1983, the Debtor paid Shotwell $30,970 and in March 1983, the Debtor paid Coral $51,700. This, combined with payments from Seabord, satisfied the obligations owed to Coral and Shotwell. As a result, the two creditors dismissed their suits against the Debtor and released all claims against Seabord.

On April 22, 1983, the Debtor filed a petition under Chapter 11 of the Code. The case was subsequently converted to Chapter 7. The Trustee in bankruptcy brought an action against Coral and Shotwell to avoid the February and March payments by the Debtor as preferential transfers.

Although Coral and Shotwell stipulated that the elements of a preference set out in Section 547(b) existed, they contended the transfers fell within the exception established by Section 547(c)(1). The Bankruptcy Court agreed and granted summary judgment in favor of the two creditors.

### III

### DISCUSSION

Section 547(b) of the Bankruptcy Code authorizes the trustee to avoid certain transfers made to or for the benefit of creditors just prior to bankruptcy. *See In re Vance*, 721 F.2d 259, 260 (9th Cir.1983). The avoidance provisions of Section 547 facilitate the prime bankruptcy policy of equality of distribution among the debtor's creditors. *See In re Bullion Reserve of North America*, 836 F.2d 1214, 1216–17 (9th Cir.1988).

Certain transfers, though qualifying as preferences under Section 547(b), should not be avoided since they do not threaten Code policy. Section 547(c)(1) states that:

■ The trustee may not avoid under this section a transfer

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for *new value given to the debtor;* and

(B) in fact a *substantially contemporaneous exchange.*

11 U.S.C. § 547(c)(1) (emphasis added). To enjoy the benefits of Section 547(c)(1), the creditor must provide new value as defined in Section 547(a)(2) in contemporaneous exchange for the debtor's payments. *In re George Rodman, Inc.*, 792 F.2d 125, 127 (10th Cir.1986); 11 U.S.C. § 547(a)(2). The Code protects these transfers because, unlike payments to unsecured creditors, they do not affect the equality of distribution of estate assets. *Brown v. First Nat. Bank of Little Rock, Ark.*, 748 F.2d 490, 491 (8th Cir.1984). Thus, payments by a debtor made in exchange for a secured creditor's release of its lien or security interest on property of the debtor falls within the shelter of Section 547(c)(1). *In re George Rodman, Inc., supra*, 792 F.2d 125, 127–28; *Matter of Fuel Oil Supply & Terminaling, Inc.*, 837 F.2d 224, 228 (5th Cir.1988). *See also Greenblatt v. Utley*, 240 F.2d 243, 247 (9th Cir.1956). However, under the definition of "new value" stated in Section 547(a)(2), the release of a right of indemnity or the mere substitution of an obligation for an antecedent debt would not suffice as it would provide nothing of tangible value to the bankruptcy estate. *See Matter of Fuel Oil Supply & Terminaling, Inc., supra*, 837 F.2d at 230; 4 *Collier on Bankruptcy*, ¶ 547.02 at 547–15 (15th Ed.1988).

In the present case, Seabord, as supplier of the payment and performance bonds required by the Miller Act, held a contingent claim against the Debtor. If Coral and Shotwell had collected on the bond, Seabord would have had a subrogated right against the Debtor for indemnification. As a holder of a contingent claim, Seabord was

a creditor of the Debtor. 11 U.S.C. § 101(9); H.R.Rep. No. 595, 95th Cong., 1st Sess. 209–10 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. This right of subrogation would have arisen under the Miller Act, which was enacted to provide subcontractors on government projects a security interest similar to that which they would have on private projects. *United Bonding Ins. Co. v. Catalytic Const. Co.,* 533 F.2d 469, 473 (9th Cir.1976). In effect, the Miller Act places subcontractors to government contractors on substantially equal footing with subcontractors to private contractors. *United States v. William F. Klingensmith, Inc.,* 670 F.2d 1227, 1232 (D.C.Cir.1982).

In *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), also a Miller Act case, the Supreme Court held that a surety has the common-law right of subrogation to contract balances upon completing of the job and payment of the subcontractors and materialmen, which is superior to the interest of the bankruptcy estate. 371 U.S. at 136, 140–41, 83 S.Ct. at 236–37. This ruling was in line with the well-established equitable doctrine of subrogation, which was designed to promote substantial justice by protecting the surety. *See Western Casualty and Surety Company v. Brooks,* 362 F.2d 486, 490 (4th Cir.1966); *Matter of Don's Elec., Inc.,* 65 B.R. 399, 403 (W.Wisc.1986).

To achieve this end, the surety is granted an equitable lien on contract proceeds so as to protect the surety whose performance enables funds to become available under the contract. *See In re Merts Equipment Co.,* 438 F.Supp. 295, 297–98 (M.Ga.1977). This equitable lien cedes to the surety the rights of the laborers and materialmen it has paid. *See Travelers Indem. Co. v. First Nat. State Bank of N.J.,* 328 F.Supp. 208, 215 (N.J.1971). In addition, and more directly related to the question presented here, a surety who undertakes to complete the project is entitled to the funds in the

hands of the government as a subrogee having the same rights to the funds *as the government. In re Ward Land Clearing & Drainage, Inc.,* 73 B.R. 313, 316 (N.Fla. 1987). *See also McAtee v. United States Fidelity and Guaranty Co.,* 401 F.Supp. 11, 14 (N.Fla.1975). Thus, the equitable lien granted the surety entitles it to precedence over the Trustee in bankruptcy of the debtor-contractor. *In re Merts Equipment Co., supra,* 438 F.Supp. at 297.[1]

■ In this case the surety did not make the payments in question to the subcontractors. Instead, the payments were made pre-petition by the Debtor as part of a tripartite agreement under which the subcontractors released their claims against Seabord in exchange for payments directly from the Debtor. Under these circumstances, the Panel does not find that the fact that the surety did not actually make the payments to the subcontractors requires the application of a different equitable rule. If the Debtor had not made the payments to Coral and Shotwell, then Seabord would have been called upon to advance the funds and then exercise its lien rights against payments due or to become due to the Debtor. The Trustee does not dispute that the estate received post-petition more than the total paid to both subcontractors from the White River Road Contract. Since the Debtor's payments to the subcontractors avoided the imposition of an equitable lien by the surety on future payments under the contract, there was no diminution of the estate. Under these facts, the release of the subcontractors' rights against the surety, which in turn could have exercised its lien rights, constituted "new value" being given in a substantially contemporaneous exchange.

In his supplemental brief, the Trustee has conceded that *Pearlman* has continuing validity as applied to cases filed under the Code. However, the Trustee argues that *Pearlman* does not apply to Miller Act

1. It should be noted that the surety prevails over the trustee even though the surety has not perfected its rights under the Uniform Commercial Code ("U.C.C."), for the equitable lien granted a surety is not governed by the U.C.C. *National*

*Shawmut Bk. of Boston v. New Amsterdam Cas. Co.,* 411 F.2d 843, 849 (1st Cir.1969); *First Ala. Bank v. Hartford Acc. & Indemnity Co.,* 430 F.Supp. 907, 910 (N.Ala.1977).

"progress payments" but only to situations involving "retainage", citing *In re Glover Const. Co., Inc.* 30 B.R. 873 (W.Ky.1983) and *In re Universal Builders, Inc.*, 53 B.R. 183, 186 (M.Tenn.1985). He goes on to argue that since the record does not reveal whether the funds later paid into the Debtor's estate under the contract were "progress payments" or "retains", then Coral and Shotwell had not satisfied their burden of proof to establish their entitlement to the "contemporaneous exchange" exception of Section 547(c)(1). *See* 11 U.S. C. Section 547(g).

In one respect the Trustee is correct, for the record before the Panel does not indicate whether the post-petition payments received by the estate on the White River Road Contract were retainage or not. However, we do not find this deficiency in the record to be critical to our decision. We conclude that the surety would have been entitled to assert a lien for both any unpaid progress payments or funds held as retainage. *National Shawmut Bk. of Boston v. New Amsterdam Cas. Co., supra,* 411 F.2d at 848. *See also American Fire & Cas. Co. v. First Nat. Bank of New York,* 411 F.2d 755, 758 (1st Cir.1969). Also, we doubt that any court would rely on the distinction between progress payments and retainage in a case such as this where the party seeking to assert a superior right, vis-a-vis a surety, is a Chapter 7 trustee concerned solely with liquidation of the estate and not in fulfilling the contractual commitments of the debtor. *See In re Glover Const. Co., Inc., supra,* 30 B.R. at 878 (Chapter 11 case); *In re Universal Builders, Inc., supra,* 53 B.R. at 183 (Chapter 11 case).

In his supplemental brief, the Trustee has also argued that the Panel should not consider the argument of Seabord claiming it was not presented to the trial court and is outside the scope of the pretrial order. The precise argument regarding the rights of a surety under *Pearlman* apparently was not presented to the trial court, as it was not presented to the Panel until the motion for rehearing. However, the argument asserted by Seabord does appear to be well within the scope of the question reserved in the pretrial order concerning the issue of what constitutes "new value" under Section 547(c)(1). In any event, the Panel may affirm an order on any ground clearly presented in the record. *In re Computer Communications, Inc.,* 824 F.2d 725, 731 (9th Cir.1987); *In re Curry and Sorensen, Inc.,* 57 B.R. 824, 829 n. 5 (9th Cir. BAP 1986).

AFFIRMED.