Victoria E. Brieant, Salt Lake City, Utah, Stanford E. Lerch, Phoenix, Ariz., for plaintiffs.

Jay M. Mann, Phoenix, Ariz., for defendants.

NEWBERY CORPORATION, et al., Plaintiffs,

v.

FIREMAN'S FUND INSURANCE COMPANY, et al., Defendants.

Civ. No. 89–1078–PHX–RGS.

United States District Court, D. Arizona.

Oct. 10, 1989.

## ORDER

STRAND, District Judge.

Newbery, debtor in possession, appeals a decision of the bankruptcy court which dismissed count 13 of its adversary complaint against Fireman's Fund Insurance Co. ("Fireman's") without leave to amend. Count 13 seeks to force Fireman's, Newbery's surety, to reimburse the estate for payments Newbery made to its trade creditors within the 90 day preference period.

Before bankruptcy, Newbery was one of the largest electrical subcontractors in the nation. Newbery contracted with Fireman's to provide payment and performance bonds on approximately 35 of Newbery's subcontracts. The bonds obligated Fireman's to insure that the subcontracts would be completed and all suppliers and materialmen would be paid. In turn, Fireman's had the right to step in and remove Newbery from the bonded subcontracts under certain circumstances, such as if Newbery defaulted on payments to its suppliers.[1] The bonding agreements also contained an indemnity provision, which allowed Fireman's to seek reimbursement from Newbery for any amounts Fireman's paid to finish bonded construction subcontracts.

This appeal concerns payments Newbery made to its own trade creditors in the 90 days before it declared bankruptcy. In count 13 of its complaint, Newbery claims that these payments are preferences—not only to the suppliers—but also to Fireman's, because they reduced the amount Fireman's would have had to pay on its

1. On June 4, 1989, five days before declaring bankruptcy, Newbery handed control of its bonded contracts to Fireman's. Fireman's has since replaced Newbery with other contractors to make good on its bonding obligations, at an alleged cost of over 22 million dollars.

bonds if Newbery had defaulted. Newbery's theory is based on the following rationale. Section 547(b) of the bankruptcy code authorizes the trustee or debtor in possession to avoid certain transfers made to or for the benefit of creditors within 90 days of bankruptcy. 11 U.S.C. § 547(b). Fireman's is a creditor of the estate because it holds a contingent claim upon the estate for any amounts it may have to pay on its bonds. 11 U.S.C. § 101(9); 4 *Collier on Bankruptcy*, § 547.04.[1] (15th ed. 1989). Therefore, to the extent Newbery paid debts that Fireman's would otherwise have had to pay, Fireman's received an indirect preference. Newbery's theory is based on a bankruptcy maxim that the estate may proceed directly against a surety, instead of circuitously recouping the preference from the creditor, forcing the creditor to proceed against the surety and then waiting for the surety to assert a claim against the estate for reimbursement. *See* 4 *Collier, supra* n. 5 (and cases cited therein).[2]

As explained in *In re Fegert*, 88 B.R. 258 (9th Cir. BAP 1988), however, in the peculiar context of construction contracts, preferences to sureties may not be voidable if supported by a contemporaneous exchange for new value given by the surety to the debtor.[3] The new value arises from the operation of the equitable lien doctrine of *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). In *Pearlman*, the Supreme Court held that a construction contract surety who completes a job for a defaulting contractor obtains an equitable right of subrogation to contract proceeds, which is superior to the interest of the bankruptcy estate. *Id.* at

140–41, 83 S.Ct. at 236–37. This right assumes the form of an equitable lien which attaches to proceeds from the bonded contract. *Fegert* at 260. Payments made by Newbery to its suppliers, though benefiting Fireman's by reducing its exposure on the bonds, simultaneously reduced dollar for dollar the equitable subrogation lien Fireman's would have obtained had it made the payments itself. As the bankruptcy appellate panel stated in *Fegert:*

> Since the Debtor's payments to the [suppliers] avoided the imposition of an equitable lien by the surety on the future payments under the contract, there was no diminution of the estate. Under these facts, the release of the subcontractors' rights against the surety, which in turn could have exercised its lien rights, constituted "new value" being given in a substantially contemporaneous exchange.

*Id.*

This court considers *Fegert* soundly reasoned and adopts its holding. Newbery, however, contends that *Fegert* is distinguishable, because in that case the court assumed there were sufficient identifiable contract proceeds to satisfy the surety's equitable lien. At oral argument on Fireman's motion to dismiss count 13, and again in an amended count 13 submitted with its motion to alter or amend judgment, Newbery asserted that unlike *Fegert*, some of the contracts bonded by Fireman's were operating at a loss, resulting in a deficiency between the equitable lien the surety would have received had it made the payments itself, and the contract proceeds available

---

**2.** This conclusion assumes the payments Newbery made to its trade creditors were to satisfy preexisting debts. If payments were made in the ordinary course of business, they would not be preferences to the trade creditors. 11 U.S.C. § 547(c)(2). Neither would they be preferences to Fireman's. If the payments to the creditor are not disgorgeable preferences, the creditor has no right to proceed against the surety. Therefore the surety has no contingent claim against the estate, the release of which could constitute a preference. *Cf. In re Aerco Metals, Inc.,* 60 B.R. 77, 80 (N.D.Tex.1985) (payment to creditor bank also preference to guarantor, be-

cause it reduced contingent claim guarantors would have against estate).

**3.** Code section 547(c) states:
The trustee may not avoid under this section a transfer—
(1) to the extent the transfer was—
(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; ánd
(B) in fact a substantially contemporaneous exchange.
11 U.S.C. § 547(c)(1)(A).

to satisfy it.[4] The court agrees. To the extent Fireman's preferences exceeded the amount of contract proceeds that could have been released from an equitable lien, they would amount to the release of an unsecured indemnity claim against the estate. The release of unsecured indemnity claims do not constitute "new value" within the meaning of § 547(a)(2). *Fegert* at 259. *Cf. Matter of Fuel Oil Supply & Terminaling, Inc.,* 837 F.2d 224, 230 (5th Cir. 1988) (critical of bankruptcy decision holding to the contrary). Because count 13, and its amended counterpart states as much, it presents a valid legal claim and should not have been dismissed.

Fireman's objects to this analysis on two grounds. First it cites *In re Rodman,* 792 F.2d 125 (10th Cir.1986) for the proposition that there is no requirement that the new value a creditor gives to the estate be equivalent to the benefit it has received. In *Rodman,* a creditor released a lien on a worthless well in exchange for the payment of an antecedent debt. The court held that § 547(c)(1) did not require the court to inquire into the value of the released lien. *Id.* at 128. *Rodman,* however, is inapposite to the present case, because under the analysis in *Fegert,* each payment Newbery made to its trade creditors corresponded to, and was exchanged for a simultaneous reduction in Fireman's hypothetical lien. Once proceeds to secure the lien were exhausted no further exchanges occurred, and Newbery's subsequent payments became preferences to Fireman's. Any other result would fly in the face of the purpose of § 547(b), which "requires any creditor who has received a greater payment than others of his class to disgorge so that all may share equally." H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78, *reprinted in* U.S.Code Cong. & Admin.News 1978, 5787, 5963, 6138.

Finally, Fireman's asserts that additional new value was given the estate by allowing Newbery to remain on its contract projects during the 90 day preference period. It argues that if Newbery had not paid its suppliers within the 90 day period, Fireman's could have stepped in and taken over the bonded contracts on which preferential payments were made. Newbery then would not have received the cash flow and other benefits that came from working on those projects. The argument assumes too much, because as long as Newbery kept paying its suppliers it had a right to continue performing on its contracts without "permission" from Fireman's.

ACCORDINGLY,

IT IS ORDERED, vacating the Bankruptcy court's order dismissing count 13 of Newbery's complaint with prejudice.

IT IS FURTHER ORDERED, remanding this case with instructions that the Bankruptcy court enter an order granting Newbery 15 days from such order to amend count thirteen of its complaint as may be deemed appropriate.

---

**4.** Fireman's cannot eliminate this problem by applying the unsatisfied portions of its liens on unprofitable projects to surplus proceeds from other profitable bonded projects. Equitable subrogation liens may only asserted against the proceeds from the same contract from which the equitable lien arose. *Western Casualty and Surety Co. v. Brooks,* 362 F.2d 486, 491 (4th Cir.1966).