**In re ABATEMENT ENVIRON-MENTAL RESOURCES, INC., Debtor.**

**Scott D. Field, Trustee, Plaintiff,**

**v.**

**Insituform East, Inc., Defendant.**

**Bankruptcy No. 99–22370–DK.**
**Adversary No. 01–1090–DK.**

United States Bankruptcy Court,
D. Maryland.

March 31, 2004.

James M. Hoffman, Rockville, MD, for Plaintiff Chapter 7 Trustee.

Robert F. Flinn, Vienna, VA, for Defendant.

## MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

Before the court are cross motions for Summary Judgment and oppositions thereto. For the reasons set forth below, these motions shall be denied.

### Facts [1]

Abatement Environmental Resources, Inc. ("AER"), as a general contractor, entered into a contract (the "Contract") with the United States of America ("U.S."), as owner, for the construction, alteration and repair of sanitary sewer lines at the United States Naval Academy, Annapolis, Maryland (the "Project"). On November 9, 1998, Insituform East, Inc. ("Defendant") entered into a subcontract agreement with AER under which Defendant agreed to reconstruct certain designated sanitary sewer pipelines.

As required by the Miller Act, 40 U.S.C. § 3131, et seq.,[2] the Insurance Company of the State of Pennsylvania ("ICSP") furnished the U.S. with a Payment Bond[3] guaranteeing that all subcontractors at the Project would be paid in full should AER default on its obligations. At the time of the issuance of the bonds, ICSP entered into an Indemnity Agreement with AER.[4] Under the terms of this agreement, AER agreed to indemnify ICSP from and against any and all losses and expenses incurred by ICSP as a result of the Payment Bond. In addition, ICSP received a right of subrogation to AER's accounts receivables for proceeds under the Contract.[5]

Work commenced under the Contract, including work by Defendant under the

---

1. The parties filed a Stipulation of Facts with this court on February 26, 2002. The recited facts are a result of the stipulation unless otherwise noted.

2. The Miller Act requires that when an entity contracts with the Federal Government, it must obtain both a payment and performance bond as a surety for the contractor. The Miller Act states:

   **(b) Type of bonds required.**—Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government the following bonds, which become binding when the contract is awarded:

   **(1) Performance bond.**—A performance bond with a surety satisfactory to the officer awarding the contract, and in an amount the officer considers adequate, for the protection of the Government.

   **(2) Payment bond.**—A payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person. The amount of the payment bond shall equal the total amount payable by the terms of the contract unless the officer awarding the contract determines, in a writing supported by specific findings, that a payment bond in that amount is impractical, in which case the contracting officer shall set the amount of the payment bond. The amount of the payment bond shall not be less than the amount of the performance bond.

   40 U.S.C. § 3131(b).

3. ICSP issued the payment bond, reference # 02–296–427 (the "Payment Bond"), and also issued a performance bond as required by the Miller Act.

4. It is common for a principal in a surety relationship to enter into an express agreement to indemnify the surety for any loss that the surety may suffer as a result of this relationship. 74 Am. Jur. 2d. *Suretyship* § 145 (2001).

5. Subrogation is defined as:

   The substitution of one person in the place of another with reference to a law-

subcontract agreement. As a result of Defendant's work, Defendant invoiced AER. The three invoices implicated in this action are:

1. Invoice # 99/136 for $2,657.41; [6]
2. Invoice # 99/155 for $45,098.00;
3. Invoice # 99/178 for $35,850.00.

On or about August 16, 1999, AER transferred eighty three thousand, six hundred five dollars and forty one cents ($83,605.41) to the Defendant (the "August Payment") as payment for the above referenced invoices.[7] However, AER failed to pay Defendant for all work performed by Defendant under the subcontract. Consequently, ICSP paid approximately $162,500.00 to Defendant under the Payment Bond for work performed by Defendant but not paid for by AER. (Opp. To Def.'s Second Mot. for Summ. J. Ex. 3).

During the course of the Contract, the U.S. made progress payments to AER for work performed under the Contract.[8] The Progress Payments were paid into AER's operating account and Defendant asserts that the August Payment was made from this same operating account.[9] Following the August Payment, the U.S. made three additional progress payments under the Contract (the "Progress Payments"):

1. September 14, 1999 for $181,614.70
2. November 1, 1999 for $54,827.17
3. January 22, 2001 for $94,021.

Two of these Progress Payments were made following the filing of AER's voluntary bankruptcy petition on October 25, 1999 (the "Petition Date"). All parties agree that as of the date of the August Payment, Defendant had provided at least $83,605.41 of uncompensated work to AER. The Contract was completed on March 17, 2000.

## Procedural History

AER filed for protection under Chapter 11 of the United States Bankruptcy Code on October 25, 1999. By Order dated March 6, 2000, the case was converted to Chapter 7, whereupon Scott D. Field (the

---

ful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. BLACK'S LAW DICTIONARY 1427 (6th ed.1990).

6. The total invoice for # 99/136 appears to be $123,868.00 (Aff. of Olukemi Daramola Ex. 4); however, the stipulated facts state that the invoice is only for $2,657.41.

7. $83,605.41 is the total amount of $2,657.41, $45,098.00, and $35,850.00. The remainder of Invoice # 99/136 was paid post-petition in two installments. (Aff. of Olukemi Daramola Ex. 4).

8. The U.S. made a total of ten payments under the terms of the Contract beginning November 20, 1998. The payments are as follows:
1. November 20, 1998 in the amount of $70,234.22
2. January 19, 1999 in the amount of $75,273.15
3. February 22, 1999 in the amount of $172,003.39
4. April 2, 1999 in the amount of $70,870.68
5. April 26, 1999 in the amount of $71,706.37
6. May 24, 1999 in the amount of $21,265.47
7. July 27, 1999 in the amount of $243,616.26
8. September 14, 1999 in the amount of $181,614.70
9. November 1, 1999 in the amount of $54,827.17
10. January 1, 2001 in the amount of $94,021.09.
(Aff. of Olukemi Daramola Ex. 4).

9. The stipulated facts state that the August Payment was made from the same operating account into which the U.S. progress payments were deposited. The parties do not inform the court as to whether any other monies were present in that account. The court will address this factual deficiency later in this opinion.

"Trustee") was appointed trustee. Upon the entry of the conversion Order, the Trustee filed the instant adversary proceeding against Defendant, alleging a an avoidable transfer under Section 547. The Defendant filed Defendant's Motion for Summary Judgment ("Defendant's First Motion") and the Trustee filed an Opposition to Defendant's Motion for Summary Judgment ("First Opposition"). The court held a hearing on these motions and denied the Defendant's First Motion on the grounds that there was no evidence presented to the court demonstrating whether and to what extent there were actual proceeds from the contract available to satisfy ICPS's equitable lien.

Subsequently, Defendant filed Defendant's Motion for Summary Judgment ("Second Motion") and Memorandum in Support of Defendant's Motion for Summary Judgment. The Trustee responded by filing Opposition to Defendant's Second Motion for Summary Judgment ("Second Opposition") and Plaintiff's Motion for Summary Judgment. Defendant then filed Defendant's Reply Memorandum in Support of Defendant's Second Motion for Summary Judgment and in Opposition to the Trustee's Motion for Summary Judgment and Defendant's Supplemental Memorandum in Support of Defendant's Motion for Summary Judgment. These motions are currently before the court.

## Discussion

### A. Summary Judgment Standard

Defendant and Plaintiff move for Summary Judgment under Federal Rule of Civil Procedure 56, made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 7056. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883–84, 110 S.Ct.

3177, 3186, 111 L.Ed.2d 695 (1990); *Sylvia Dev. Corp. v. Calvert County, Maryland*, 48 F.3d 810, 817 (4th Cir.1995). *See also*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (holding that to grant summary judgment a court must find that "there be no *genuine* issue of *material* fact ...." (emphasis in original)). In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the United States Supreme Court wrote, "[i]n our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–323, 106 S.Ct. at 2552. The court must examine whether there are (1) material facts and (2) there is a genuine dispute over those material facts. A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Substantive law determines what facts are material; meaning disputes over facts that might affect the outcome of the suit under the governing law are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Thus, the question becomes what facts are in dispute and whether those facts are material.

### B. Substantive Law Requirements

■ Plaintiff moves to avoid the August Payment as a preference under Section 547(b), which states:

> [e]xcept as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

> (1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title

(B) the transfer had not yet been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). In short, the elements of a voidable preference are that the trans-

fer was to, or for the benefit of a creditor, on account of an antecedent debt, made while the debtor was insolvent, within 90 days of the petition, and the transfer enabled the creditor to receive a larger satisfaction of creditor's debt than if the transfer had not been made. *Union Bank v. Wolas*, 502 U.S. 151, 155, 112 S.Ct. 527, 529–30, 116 L.Ed.2d 514 (1991).[10] Each of the elements of Section 547(b) must be shown by the trustee in order for a trustee to avoid a transfer under this section. 11 U.S.C. § 547(g).

In the Complaint, Plaintiff asserts facts satisfying each element of 547(b). First, the Complaint states that the transfer was made to, or for the benefit of a creditor because it was made to Defendant, a creditor. (Compl.¶ 8). Second, the payment was made on account of an antecedent debt (Compl.¶ 9) since AER owed Defendant payments resulting from the sub-contracting relationship, as evidenced by the invoices submitted to AER. The invoices were issued prior to the August Payment, thus the debt appears to be an antecedent

---

**10.** According to the United States Court of Appeals for the Fourth Circuit, the avoidance power of the trustee serves two important goals. First, the avoidance powers allow the trustee to promote equality of distribution among creditors by ensuring that all creditors in the same class receive a pro rata share of the debtor's estate, and second, the avoidance powers discourage creditors from trying to outmaneuver each other in an attempt to take advantage of a financially unstable debtor. *In re Barefoot*, 952 F.2d 795, 797–98 (4th Cir.1991), *see also, Butler v. David Shaw, Inc.*, 72 F.3d 437 (4th Cir.1996). The legislative history of Section 547(b) further demonstrates that Section 547(b) was designed to meet these goals:

A preference is a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate. The purpose of the preference

section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution.

H.R. Rep. No. 95–595, at 177–78 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963.

debt owed prior to the time of the payment. Third, at the time of the August Payment, AER was insolvent. (Compl.¶ 10). Trustee asserts that in August, 1999, AER was insolvent as that term is defined under Sections 101(32) and 547.[11] Also, Section 547(f) establishes that "[f]or the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). Thus, the Debtor is presumed insolvent at the time of the August Payment because it is undisputed that the payment was made within 90 days of the petition since the payment was made on August 16, 1999 and AER filed its petition on October 25, 1999. Finally, the Trustee states that the August Payment entitled Defendant to receive more than it would have received under a Chapter 7 liquidation. (Compl.¶ 12).

■ The crucial inquiry regarding the Plaintiff's Motion for Summary Judgment is whether the Defendant received more than it would have received under a hypothetical Chapter 7 liquidation. The relevant date for determining if a creditor received more than it would have received under a hypothetical Chapter 7 is the petition date. *Sloan v. Zions First National Bank (In re Castletons, Inc.)*, 990 F.2d 551, 554 (10th Cir.1993) ("When assessing an alleged preferential transfer, the relevant inquiry is 'not … what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but … *the actual effect of the payment as determined when the bankruptcy results.*' " (quoting *Palmer*

*Clay Products Co. v. Brown*, 297 U.S. 227, 229, 56 S.Ct. 450, 451, 80 L.Ed. 655 (1936) (emphasis in quote))); *see also, Neuger v. United States (In re Tenna Corporation)*, 801 F.2d 819 (6th Cir.1986). By receipt of the August Payment, Defendant received 100 percent of the debt retired by that payment. Therefore, the question is, had the payment not been received, would Defendant have received less than one hundred percent from the debtor's estate if debtor had filed under Chapter 7? *See Smith v. Creative Financial Management, Inc. (In re Virginia–Carolina Financial Corp.)*, 954 F.2d 193, 199 (4th Cir.1992); *see also, Committee of Creditors Holding Unsecured Claims v. Koch Oil Co. (In re Powerine Oil Co.)*, 59 F.3d 969, 972 (9th Cir.1995); *Scroggins v. BP Exploration & Oil, Inc. (In the Matter of Brown Transport Truckload, Inc.)*, 161 B.R. 735, 739 (Bankr.N.D.Ga.1993).

■ In this case, Defendant would have received less than one hundred percent of its claim (the three invoices) if a liquidation of AER had occurred on the Petition Date since AER's estate has insufficient resources to pay the numerous claims filed against AER.[12] Nevertheless, Defendant argues that the August Payment does not fall under Section 547 because there was no depletion of AER's estate. *See A.I. Credit Corp. v. Drabkin (In re Auto–Train Corp.)*, 49 B.R. 605, 612 (D.D.C.1985). Specifically, Defendant asserts that AER's estate lost no value because if AER had not made the August Payment, ICSP would have been required to make the payment under the Payment Bond. If ICSP had made such a payment,

---

11. Under the Bankruptcy Code, with reference to a corporation, insolvency occurs when the "financial condition [of the entity is] such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation…." 11 U.S.C. § 101(32)(A).

12. The court notes that one hundred seventy seven proofs of claim have been filed against AER claiming an amount in excess of the value of the estates's assets.

Defendant argues that ICSP would have held a secured claim against AER's estate in the amount of the August Payment.[13] Consequently, AER's bankruptcy estate available for distribution to unsecured creditors would have been reduced by the same amount as the alleged preferential payment, thus the estate remaining to pay creditors was allegedly not diminished by the August Payment.

In order to complete this analysis the court must also examine Section 550. That section permits a trustee who is successful in an action under Section 547 to recover the property, or the value of the property, from either the transferee, or a creditor that benefitted from the transfer.[14] In this case, Defendant is the transferee and ICSP is a party that benefitted from the transfer. The power of the Trustee to recover from a creditor benefitted by a preferential transfer has been limited with the enactment of subsection (c). That subsection states:

(c) If a transfer made between 90 days and one year before the filing of the petition—

(1) is avoided under section 547(b) of this title; and

(2) was made for the benefit of a creditor that at the time of such transfer was an insider;

the trustee may not recover under subsection (a) from the transferee that is not an insider.

11 U.S.C. § 550(c).[15] However, the limitation of this subsection is inapplicable to the instant case because the transfer to Defendant was made within 90 days of the petition rather than the 91–day to one-year period addressed by Section 550(c). Therefore, "recovery may be obtained from either the initial transferee ... *or* the entity for whose benefit the transfer was made ..., but not both." *Official Unsecured Creditors Committee of Sufolla, Inc. v. U.S. National Bank of Oregon (In re Sufolla)*, 2 F.3d 977, 980 (9th Cir. 1993) (citing *Levit v. Ingersoll Rand Fi-*

---

**13.** Under *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), a "surety under a Miller Act payment bond has an equitable lien against the debtor's contract balances which is superior to the bankrupt estate." (Mem. in Supp. of Df.'s Mot. for Summ. J. at 7 (citing *Pearlman*, 371 U.S. at 136–37, 83 S.Ct. 232)). The *Pearlman* case held that a surety who completes a contract has an equitable right to indemnification out of a retained fund which is held by the contractor. *Pearlman*, 371 U.S. at 139, 83 S.Ct. 232. The *Pearlman* decision was prior to the enactment of the present Bankruptcy Code, but several United States Court of Appeals have applied *Pearlman* in cases subsequent to the enactment of the present Bankruptcy Code. *See O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert)*, 887 F.2d 955, 958–59 (9th Cir.1989) (finding that the surety is subrogated to the equitable lien that an unpaid subcontractor would theoretically hold); *First Indemnity of America Insurance Co. v. Modular Structures, Inc. (In re Modular Structures, Inc.)*, 27 F.3d 72 (3d Cir.1994).

**14.** Section 550 states:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoid under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

**15.** This subsection was enacted in response to the United States Court of Appeals for the Seventh Circuit's decision in *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989), in which that court held that the preference-recovery period for outside creditors "is one year when the payment produces a benefit for an inside creditor, including a guarantor." *Id.* at 1200–01.

*nancial Corp.,* 874 F.2d 1186, 1194 (7th Cir.1989)). Accordingly, if it is demonstrated that the August Payment benefitted ICSP as a creditor, in a manner constituting an avoidable preferential transfer under Section 547, the Trustee may succeed in the instant action against the Transferee (the Defendant).

Examining the effect of the transfer as to the benefit to ICSP and the application of Section 547, if the funds transferred were collateral secured by ICSP's contingent subrogation lien, no avoidable preference exists. This is because ICSP would have received no lesser recovery for the contingent indemnity debt under a hypothetical Chapter 7 liquidation. Also, a hypothetical liquidation (assuming the payment was not made) would not have provided any greater estate for distribution to unsecured creditors. Section 547(b)(5) does not apply "if a creditor is no better off vis-a-vis the other creditors of the bankruptcy estate than he or she would have been had the creditor waited for liquidation and distribution of the assets of the estate." *Hager v. Gibson,* 109 F.3d 201, 210 (4th Cir.1997).

■ If the August Payment had not been made to the Defendant, ICSP would have paid the Defendant for the amount of Defendant's claim that was satisfied by the August Payment, in accordance with the payment bond issued by ICSP. Upon that event, the claim of the Defendant would have been shifted to ICSP by subrogation.[16] ICSP, by virtue of its subrogation rights, has a secured contingent claim to the extent of the value of the estate's interest in property covered by such interest of ICSP.[17] If the funds used to make the August Payment were proceeds of the Contract, ICSP's lien would include such proceeds. Where a secured creditor receives payment from its collateral, no preferential effect is created and no right to avoidance exists. This is because in a hypothetical Chapter 7 liquidation, that secured creditor would have been entitled to the property that was transferred to, or for the benefit of that creditor, and thus the questioned transfer neither provided the creditor with a greater return than it would have received in the hypothetical liquidation, nor depleted the estate as to unsecured creditors. Because neither party has provided to the court evidence that the funds transferred by the August Payment were completely made up of proceeds from the Contract upon which ICSP held a lien securing its indemnity right under this specific payment bond, the court cannot assume that this fact is undisputed.

■ To the extent that ICSP did not have a lien upon the funds constituting the August Payment, the payment may not be immunized from the application of Section 547. Rather, a second factual question

---

**16.** As a result of the Payment Bond, ICSP holds a contingent claim against AER's estate because ICSP develops a claim only if AER defaulted on its obligation to pay Defendant the August Payment. The code defines creditor to mean an "entity that holds a claim against the debtor...." 11 U.S.C. § 101(10). The code also defines claim to mean a "right to payment, whether or not such right is reduced to judgment, ... contingent,...." 11 U.S.C. § 101(5). ICSP holds a contingent claim against AER, which makes ICSP a creditor of the bankruptcy estate and subject to the avoidance powers in Section 547. *See* 11 U.S.C. § 101(5), (10).

**17.** 11 U.S.C. § 506(b) provides: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

arises. Even if the August Payment was not made up of proceeds over which ICSP held its subrogation lien, nonetheless, if ICSP held perfected liens against other property of the estate sufficient to fully collateralize its contingent claim, the August Payment will not constitute an avoidable preference. "Transfers to a fully-secured creditor, for example, are not avoidable as preferences, since the secured claim would be satisfied in full in a Chapter 7 liquidation." *Travelers Insurance Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Services)*, 980 F.2d 792, 803 (1st Cir.1992). Under this scenario, a transfer of the unliened funds for the payment would initially deplete the estate for other creditors. However, such transfer would also reduce the secured claim of ICSP by automatically releasing ICSP's lien in the same amount. Where such collateral is sufficient to fully secure the claim of the creditor receiving or benefitting from the questioned transfer, the creditor is placed in no better position than it would have been in the hypothetical liquidation under Chapter 7. Likewise the estate for unsecured creditors is not depleted because simultaneous with the transfer of the unliened funds out of the estate, the estate receives the transfer by release of the creditor's lien upon the collateral.[18] But again, no evidence has been presented to the court as to whether such collateralization of a value sufficient to make ICSP a fully secured creditor as to its contingent claim existed on the date of the petition.

---

**18.** Section 547(c)(1) provides: The trustee may not avoid under this section a transfer

> (1) to the extent that such transfer was—
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> (B) in fact a substantially contemporaneous exchange.

### Conclusion

The court shall deny both the Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment because the court finds that there are genuine disputes of material facts and that neither party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883–84, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Sylvia Dev. Corp. v. Calvert County, Maryland*, 48 F.3d 810, 817 (4th Cir.1995). An order conforming to this Memorandum of Decision will be entered.

---

In *O'Rourke v. Coral Construction, Inc. (In re E.R. Fegert, Inc.)*, 88 B.R. 258, 259 (9th Cir. BAP 1988), the Bankruptcy Appellate Panel for the Ninth Circuit stated: "The Code protects these transfers because, unlike payments to unsecured creditors, they do not affect the equality of distribution of estate assets. Thus, payments by a debtor made in exchange for a secured creditor's release of its lien or security interest on property of the debtor falls within the shelter of Section 547(c)(1)."