PRECISION WALLS, INC., Appellant,

v.

Gregory B. CRAMPTON,
Trustee, Appellee.

No. 5:95–CV–748–BO.

United States District Court,
E.D. North Carolina,
Western Division.

April 27, 1996.

David Warren Boone, Elizabeth City, NC, for appellant.

William P. Janvier, Merriman, Nicholls & Crampton, Raleigh, NC, for appellee.

*OPINION*

TERRENCE WILLIAM BOYLE, District Judge.

This matter is before the undersigned on appeal from judgment of the United States Bankruptcy Court for the Eastern District of North Carolina. Several issues related to the recovery of prepetition transfers pursuant to 11 U.S.C. § 547(b) and the award of prejudgment interest on the recoverable transfers are presented. The judgment of the Bankruptcy Court that the payments are recoverable is AFFIRMED, but the award of prejudgment interest from September 23, 1994 is REVERSED.

■ This court has appellate jurisdiction pursuant to 28 U.S.C. § 158 to hear this appeal from the judgment of the Bankruptcy Court for the Eastern District of North Carolina. Conclusions of law are reviewed de novo. *Butler v. David Shaw, Inc.,* 72 F.3d 437, 441 (4th Cir.1996). Findings of fact are reviewed for clear error. *Id.*

This case arises out of the Chapter 7 bankruptcy of the Accord Group, Inc. (Accord), filed on December 20, 1993. Accord was a general contractor that employed appellant as a drywall installation subcontractor on several projects. Within the ninety days preceding the bankruptcy filing, several payments were made to appellant by either Accord or its customers. Appellee trustee filed an adversary proceeding to recover seven of those payments as preferences pursuant to 11 U.S.C. § 547. After trial the Bankruptcy Court held that the trustee could recover payments two, four, five, and six.[1] Furthermore, the court awarded to the trustee interest on the four recoverable payments from September 23, 1994, the date of the trustee's initial demand to appellant. On appeal, the issues presented to the court are: (1) whether the payments enabled appellant to receive

more than it would have under Chapter 7 (§ 547(b)(5)); (2) whether the second payment was made in the ordinary course of business (§ 547(c)(2)); and (3) whether the Bankruptcy Court awarded prejudgment interest on the recoverable payments from the proper date.

*Payments Four, Five, and Six*

In November, 1993, within the ninety days before the bankruptcy filing, Highwoods Properties Company (Highwoods) made payments four, five, and six by checks, in the amounts of $2,669.00, $3,209.00, and $61,-568.83, respectively, payable jointly to Accord and appellant.[2] The payments represented amounts owed to appellant by Accord for appellant's work on Highwoods' projects on which Accord served as the general contractor. Accord endorsed the checks and transferred them to appellant.

After trial the Bankruptcy Court held that "[appellant] contends that these checks were transferred in exchange for new value in that [appellant] gave up its lien rights. 11 U.S.C. § 547(c)(1). While [appellant] had the right to file liens, it had not perfected that right by actually filing at the time of these payments. Additionally, other subcontractors could also have asserted lien rights, and [appellant] has not shown that the value of its lien rights would have assured it a 100 percent payout. There was no showing that the owner owed Accord funds sufficient to satisfy all of the subcontractors' liens. As a result, the court is not persuaded that these transfers were made for new value or that [appellant] did not receive more than other creditors as a result of these payments. Consequently, these payments may be avoided by the trustee." *Crampton v. Precision Walls, Inc.,* No. 93–01865–5–ATS, slip op. at 3–4 (Bankr. E.D.N.C. June 28, 1995).

---

1. For the sake of continuity, the court will refer to the payments as numbered by the Bankruptcy Court and the parties. In addition, the court notes that the trustee does not appeal the lower court's ruling that payments one, three, and seven are not recoverable as preferences.

2. The issue of whether the joint checks qualify as "an interest of the debtor in property," 11 U.S.C.

§ 547(b), is not before the court. Nevertheless, it should be noted that this court has recently found an interest of a debtor general contractor in funds paid by joint checks where, as here, the debtor had a sufficient interest in the amounts paid by the joint checks and the property owner was not under any obligation to make direct payments to subcontractors. *See Code Electric, Inc. v. Crampton,* 197 B.R. 807, 808–09 (E.D.N.C.1996) (Howard, J.).

Appellant lodges a two-pronged attack upon the Bankruptcy Court's conclusion that the payments enabled appellant to receive more than it would have under Chapter 7. First, appellant argues that the Bankruptcy Court erred by placing the burden of proof on appellant as to § 547(b)(5). Second, appellant contends that the trustee failed to sustain his burden. Neither argument is persuasive.

■ Section 547(g) allocates the burden of proof with respect to preference actions. Pursuant to that section the trustee bears the burden of proving the avoidability of a transfer under subsection (b) of § 547, but the transferee bears the burden of proving the nonavoidability of a transfer under the affirmative defenses contained in subsection (c). 11 U.S.C. § 547(g). Thus, plaintiff is correct that the trustee is responsible for proving that appellant received more than it would have in a Chapter 7 proceeding.

■ Nevertheless, scrutiny of the Bankruptcy Court's opinion reveals that the court properly allocated the burdens. Although the court's language is less than precise, the court made two separate findings pertaining to payments four, five, and six. First, in the fourth sentence of the relevant paragraph, the court held that "while [appellant] had the right to file liens, it had not perfected that right by actually filing at the time of these payments." As discussed below, this finding, in conjunction with the evidence of Accord's insolvency at the time the bankruptcy petition was filed, was tantamount to a holding that the trustee had proven the element contained in § 547(b)(5). Adding to the lack of clarity is the court's second finding, stated in the next sentence, that had appellant perfected its liens, "other subcontractors could have also asserted lien rights, and [appellant] has not shown the value of its lien rights would have assured it a 100 percent payout." Although this language appears to reverse the burdens, the finding is mere dicta and thus has no significance. In any respect, the record is clear that the trustee carried his burden of satisfying § 547(b)(5).

■ Appellant raises two issues in support of its contention that the trustee failed to sustain its burden. First, appellant argues that the court should have treated it as a secured creditor because it could have perfected its liens, but chose not to after it received payment. Second, appellant asserts that it was fully secured and thus received no more through payments four, five, and six than it would have under Chapter 7. Because the court finds that compliance with the state statutory requirements for perfection are required to obtain secured creditor status, the court need not reach the second issue.

■ One of the primary purposes of the Bankruptcy Code is the equal treatment of all creditors of a particular debtor. Section 547 realizes this goal in part by empowering the trustee to recover certain transfers made by the debtor in the period immediately preceding the filing for bankruptcy protection. Of particular significance here, § 547(b)(5) permits recovery of a prepetition transfer only if the creditor received more than it would have through a hypothetical Chapter 7 liquidation had the transfer not been made. If a creditor is fully secured, the transfer is not generally recoverable. In contrast, if a creditor is unsecured, the transfer is generally avoidable by the trustee. 11 U.S.C. § 544. Thus, the recoverability of a transfer turns on the status of a creditor and whether that creditor was "preferred" over other creditors of the same class.

■ Creditor status is determined by reference to state law. *See Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); *Havee v. Belk,* 775 F.2d 1209, 1218–19 (4th Cir.1985). Section 44A–18 of the North Carolina General Statutes provides that upon compliance with Article 2 of Chapter 44A, a subcontractor who provides labor or materials at a construction site is entitled to a lien upon funds owed to the contractor arising out of the relevant improvement. N.C.Gen.Stat. § 44A–18(1) (1995). The statute further provides that a subcontractor may perfect its lien by filing written notice with the obligor, the party liable to the general contractor. *Id.* § 44A–18(6). Perfection of the lien entitles a creditor to priority over the interests or claims of others in the funds. *Id.* § 44A–22.

In light of appellant's failure to perfect its lien, appellant must be classified as an unsecured creditor in bankruptcy. The record is clear, and appellant does not contest, that it did not file any notice with the obligor, and therefore did not comply with the requirements for perfection. Under the statute only perfection vests a creditor with priority over others. *See id.* Nevertheless, appellant argues that its receipt of payment should excuse its failure to perfect because it could have perfected the lien had it not received payment. In effect, appellant asks this court to recognize perfection by possession (receipt of payment) in spite of the statutorily imposed requirement of notice.

███ "It is well established that a lien is lost if the steps to perfect it are not taken *in the manner* and within the time prescribed by law." *Strickland v. General Bldg. & Masonry Contractors, Inc.*, 22 N.C.App. 729, 731, 207 S.E.2d 399 (1974) (emphasis added). "If a lien is not perfected, it cannot be enforced." *Cameron & Barkley Co. v. American Ins. Co.*, 112 N.C.App. 36, 39–40, 434 S.E.2d 632 (1993). If appellant had filed notice with the owner as prescribed by the statute, then its receipt of funds subsequent to perfection would not be avoidable by the trustee because appellant would be a secured creditor under North Carolina law. Appellant failed, however, to comply with the statute.

Although the requirement of written notice may seem technical because the notice is given to the property owner rather than filed publicly as is done with liens on realty or personalty, the notice serves a similar purpose. For example, before a subcontractor extends credit to a contractor, it can inquire of a property owner as to the existence of any perfected liens. Notice also alerts the owner to financial instability on the part of its general contractor as well as to the possibility of the perfection of additional liens. Furthermore, the parties have not cited, and this court has not found, any North Carolina case law authorizing extra-statutory methods of perfection. Finally, this court is not in a position to second guess the North Carolina legislature with respect to its enactment of a notice requirement for perfection. There-

fore, this court will require a subcontractor to comply with the state statute in order to obtain the protections provided by the Bankruptcy Code to secured creditors.

███ Due to appellant's status as an unsecured creditor, its receipt of 100% of its claim in November, 1993 amounted to a preference over other unsecured creditors. At trial the trustee introduced a summary of schedules filed in the bankruptcy proceedings, demonstrating liabilities of $211,247.88 and assets of $181,051.10. (Pl.'s Ex. 4) Contrary to appellant's argument, this evidence is sufficient to support the implicit finding of the Bankruptcy Court, which sat as trier of fact, that the unsecured creditors would receive less than 100% on their claims. *See In re Air Conditioning, Inc. of Stuart*, 845 F.2d 293, 297 (11th Cir.), *cert. denied sub nom. First Interstate Credit Alliance, Inc. v. American Bank of Martin County*, 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988); *In re Babiker*, 180 B.R. 458, 460 (Bankr.E.D.Va. 1995). Thus, the Bankruptcy Court properly held that appellant received more than it would have in a hypothetical Chapter 7 liquidation.

Accordingly, the judgment of the Bankruptcy Court that payments four, five, and six are recoverable as preferences because appellant received more than it would have under Chapter 7 is AFFIRMED.

*Payment Two*

███ In November, 1993, Accord made payment two, in the amount of $17,405.00, to appellant for work completed on Highwoods' Met Life construction project. The Bankruptcy Court held the payment recoverable by the trustee because appellant had not perfected its lien rights. In addition, the court found that appellant had not proven that the payment qualified under the ordinary course of business exception contained in § 547(c)(2). Appellant assigns error to each of these rulings. Because no material differences exist between payment two and payments four, five, and six with respect to the trustee's proof of the element contained in § 547(b)(5), the court adopts the analysis applied above and affirms the lower court's determination that appellant received more

than it would have in a Chapter 7 proceeding. The court now turns to appellant's contention that payment two was made in the ordinary course of business.

 Section 547(c)(2) provides an exception to the general rule that a trustee can recover preferences. A trustee may not avoid a transfer to the extent that such a transfer was:

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made accounting to ordinary business terms.

11 U.S.C. § 547(c)(2). The purpose of the exception is to leave undisturbed normal financial transactions because they do not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy. S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5874. The burden of proving each element of this affirmative defense rests with appellant. § 547(g).

At trial the parties focused on the second element of § 547(c)(2) by introducing evidence pertaining to appellant's method of collecting the payment and the parties' course of dealing.[3] The evidence indicates that on November 2, 1993 appellant faxed Accord a letter stating that appellant would "have to seek payment directly from [the] owner" if payment was not received by November 5, 1993. (Tr. at 13.) Reviewing the testimony regarding the course of dealing between the parties, the Bankruptcy Court noted that appellant's chief financial officer stated that "the ordinary policy for attempting to collect delinquent payments was first to contact the contractor, then to contact the owner to determine whether the contractor

had been paid." *Crampton v. Precision Walls, Inc.,* No. 93–01865–5–ATS, slip op. at 4 (Bankr.E.D.N.C. June 28, 1995). The court then concluded that appellant had gone beyond the ordinary course of business by "instead threaten[ing] to seek payment from the owner" because such a procedure was never contemplated by the parties. *Id.*

 Subsection (B) of § 547(c)(2) is governed by a subjective test. *Advo–System, Inc. v. Maxway Corp.,* 37 F.3d 1044, 1048 (4th Cir.1994); *Harman v. First Am. Bank of Md.,* 956 F.2d 479, 486–88 (4th Cir.1992). Determination of whether a payment was made in the ordinary course of business requires "an analysis of the business practices which were unique to the particular parties under consideration." *Harman,* 956 F.2d at 486 (quoting *Waldschmidt v. Ranier,* 872 F.2d 739, 743 (6th Cir.1989)). This inquiry is "peculiarly factual." *Id.* (quoting *In re First Software Corp.,* 81 B.R. 211, 213 (Bankr. D.Mass.1988)).

A review of the record reveals that the evidence supports the Bankruptcy Court's conclusion that the payment was made outside the ordinary course of business. Appellant faxed a letter to Accord stating it would "have to seek payment directly from [the] owner." (Tr. at 13.) Gary Roth, appellant's chief financial officer, testified that the ordinary policy for collecting payment was to first contact the contractor, and then to contact the owner for the purpose of determining whether the contractor had been paid because subcontractors usually get paid shortly after the general contractor. (Tr. at 49–51.) Wayne Wickham, the owner and president of Accord, testified that he did not want subcontractors contacting owners because it was "embarrassing" and did not "give the owner[s] a good feeling of stability toward [Accord,] the general contractor." (Tr. at 10.) Although Roth had a relationship with George Smith at Highwoods, (Tr. at 31), Wickham neither requested nor de-

---

3. No dispute exists as to whether Accord made payment two in payment of a debt incurred in the ordinary course of business. Accord paid appellant in response to two invoices, dated August 31, 1993 and September 30, 1993, for work completed on a Met Life construction project.

Thus, appellant satisfied subsection (A) of § 547(c)(2). Only slight evidence was produced at trial with respect to the element contained in subsection (C) pertaining to "ordinary business terms."

sired that Roth contact Highwoods regarding payment, (Tr. at 32). In fact, Wickham explained that this was the type of contact with owners about which he worried, and that such a letter would make him pay a subcontractor more quickly than normal. (Tr. at 13.) Thus, the Bankruptcy Court's findings that appellant threatened to seek payment from the owner, and that the threat was outside the ordinary course of business contemplated by appellant and Accord are factually supported.

Accordingly, the judgment of the Bankruptcy Court that payment two is recoverable as a preference because appellant received more than it would have under Chapter 7 and the payment was made outside the ordinary course of business is AFFIRMED.

### Prejudgment Interest

 The Bankruptcy Court awarded prejudgment interest on the avoidable payments from September 23, 1994, the date of the trustee's initial demand. Appellant argues that the court erred with respect to payments four, five, and six, because the demand for return of those funds was not made until the filing of the Amended Complaint by the trustee on March 29, 1995.

The trustee is only "entitled ... to prejudgment interest from the date of demand for its return, or in the absence of a prior demand, from the date of the filing of the complaint." *In re H.P. King Co.,* 64 B.R. 487, 489 (Bankr.E.D.N.C.1986); *see also Code Electric, Inc. v. Crampton,* 197 B.R. 807 (E.D.N.C.1996) (Howard, J.). No evidence exists of a demand for return of payments four, five, and six before the filing of the Amended Complaint. The trustee's original demand letter concerned only payments one, two, and three as well as a payment not adjudicated by the Bankruptcy Court. Therefore, the trustee may only recover prejudgment interest on payments four, five, and six from March 29, 1995.

Accordingly, the judgment of the Bankruptcy Court awarding prejudgment interest on payments four, five, and six from September 23, 1994 is REVERSED.

### Conclusion

In sum, the judgment of the Bankruptcy Court that payments four, five, and six are recoverable as preferences because appellant received more than it would have under Chapter 7 is AFFIRMED. Similarly, the judgment of the Bankruptcy Court that payment two is recoverable as a preference because appellant received more than it would have under Chapter 7 and the payment was made outside the ordinary course of business is AFFIRMED. However, the judgment of the Bankruptcy Court awarding prejudgment interest on payments four, five, and six from September 23, 1994 is REVERSED. The case is hereby REMANDED to the Bankruptcy Court for amendment of the judgment consistent with this opinion.