**In re Robert W. KEPLINGER and Evelyn M. Keplinger, Debtors.**

**Nathan M. Goldberg, Trustee, Plaintiff/Appellant,**

**v.**

**Michael Such, d/b/a Security & Such, Defendant/Appellee.**

No. 1:02–CV–0111.

United States District Court, N.D. New York.

Oct. 7, 2002.

Goldberg & Gottheim, Nathan M. Goldberg, of counsel, Albany, NY, for Nathan Goldberg.

Kriss, Kriss, Brignola Persing, LLP, Dominick J. Brignola, of counsel, Albany, NY, for Michael Such.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Appellant Nathan M. Goldberg, (the trustee in the underlying Chapter 7 bankruptcy proceeding) ("Trustee"), appeals the November 15, 2001, Memorandum, Decision & Order of the Bankruptcy Court finding that the Trustee failed to present sufficient evidence to carry his burden of demonstrating that a pre-bankruptcy petition payment to Appellee Michael Such, d/b/a Security & Such ("Appellee"), should have been deemed an avoidable preference pursuant to 11 U.S.C. § 547. *See* Mem.— Dec. & Order, No. 00–12789, Nov. 15, 2001 (Littlefield, B.J.).

## II. FACTS

The instant matter involves a core adversary proceeding before the Bankruptcy Court.

In January 1999, Debtors Robert and Evelyn Keplinger ("Debtors") borrowed funds from Appellee such that they became indebted to him in an amount in excess of $4,128.00. As collateral for the loan, Debtors provided Appellee with a 5.1 carat diamond ring. Appellee was unaware of any prior security interest in the ring.

On August 19, 1999, Debtors gave Appellee two separate personal checks totaling $4,128.00. Debtors requested that Appellee not negotiate the checks until they put sufficient funds in their bank account to cover the checks. Because Debtors were unable to satisfy their debt, in approximately the Fall of 1999, they suggested that Appellee sell the ring. Appellee was unable to sell the ring for a sufficient sum. In October 1999, Appellee returned the ring to Debtors so they could sell it and pay the debt.

On March 14, 2000, Debtors delivered the ring to Northeast Fine Jewelry, which gave Debtors $25,847.00. Of these funds, $15,847.00 was applied to satisfy Debtor's account with Northeast Fine Jewelry and $10,000 was given to Debtors. On March 15, 2000, Debtors presented Appellee with a $4,128.50 check issued by the Adirondack Trust Company. At that time, Debtors owed Appellee more than $4,128.50. Appellee also still possessed the two unnegotiated checks. Appellee negotiated the check issued by the Adirondack Trust Company.

On May 17, 2000, Debtors filed a Chapter 7 petition. In September 2000, the Chapter 7 Trustee commenced an adversary proceeding against Appellee pursuant to 11 U.S.C. § 547 to recover an alleged preferential payment. The case was submitted to the Bankruptcy Court on stipulated facts. The Bankruptcy Court found that the Trustee failed to carry his burden of presenting sufficient facts demonstrating his entitlement to avoid the transfer of funds to Appellee. Specifically, the Bankruptcy Court stated that the Trustee failed to "provide *any* factual analysis or legal support for his conclusion that the debt is

unsecured or that the [Appellee] received a disproportionate share. Moreover, the court is unable to determine, from an independent review of the file, that this Defendant has received more than it should." Mem.—Dec. & Order, No. 00–12789, Nov., 15, 2001, at 3–4 (emphasis added).

### III. STANDARD OF REVIEW

■ In reviewing a bankruptcy court's decision, a district court applies the clearly erroneous standard to conclusions of fact and *de novo* review to conclusions of law. *In re Manville Forest Prods. Corp.*, 209 F.3d 125, 128 (2d Cir.2000); *In re Petition of Bd. of Directors of Hopewell Int'l Ins. Ltd.*, 275 B.R. 699, 703 (S.D.N.Y.2002); Fed. R. Bankr.P. 8013.

### IV. DISCUSSION

■ The issue presented is whether the Bankruptcy Court properly found that the Trustee failed to sustain his burden of demonstrating that the $4,128.50 payment to Appellee was avoidable as a preferential payment under 11 U.S.C. § 547.

Pursuant to 11 U.S.C. § 547(b), a trustee seeking to avoid a transfer as preferential has the burden of demonstrating that there was a transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if:

(A) the case were a case under Chapter 7...;[1]

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(5); *see* 11 U.S.C. § 547(g) ("the trustee has the burden of proving the avoidability of a transfer under subsection (b)."); *In re Roblin Indus., Inc.*, 78 F.3d 30, 34 (2d Cir.1996); *In re Robinson Bros. Drilling, Inc.*, 9 F.3d 871, 874 (10th Cir.1993).

The Bankruptcy Court found, and the parties do not dispute, that the first three elements are satisfied. The parties dispute whether the Trustee satisfied the fourth and fifth elements, 11 U.S.C. §§ 547(b)(4) and 547(b)(5) respectively.

The Ninth Circuit summarized the fifth element, § 547(b)(5), as follows:

[W]hether a particular transfer is preferential should be determined "not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results." [*Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 229, 56 S.Ct. 450, 80 L.Ed. 655 (1936)]. This analysis requires that in determining the amount that the transfer "enables [the] creditor to receive," 11 U.S.C. §§ 547(b)(5) (1982), such creditor must be charged with the value of what was transferred *plus* any additional amount that he would be entitled to receive from a Chapter 7 liquidation.

---

1. This case is somewhat of an anomaly in that the underlying bankruptcy petition actually is a Chapter 7 proceeding.

The net result is that, as long as the distribution in bankruptcy is less than one-hundred percent, *any* payment "on account" to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made. *See id.; Barash v. First Galesburg National Bank,* 658 F.2d 504, 508–09 (7th Cir. 1981); *In re Saco Local Development Corp.,* 30 B.R. 862, 865–66 (Bankr.D.Me. 1983); *In re Utility Stationery Stores,* 12 B.R. 170, 179 (Bankr.N.D.Ill.1981). The Court in *Palmer Clay Products* demonstrated this proposition with a simple example:

[W]here the creditor's claim is $10,000, the payment on account $1000, and the distribution in bankruptcy 50%, the creditor to whom the payment on account is made receives $5500, while another creditor to whom the same amount was owing and no payment on account was made will receive only $5000. *Palmer Clay Products,* 297 U.S. at 229, 56 S.Ct. 450.

*In re Lewis W. Shurtleff, Inc.,* 778 F.2d 1416, 1421 (9th Cir.1985). It is, therefore, instructive to ascertain: (1) whether Appellee was a secured creditor; and (2) if so, whether there would have been a less than 100% payout to unsecured creditors in a Chapter 7 distribution.

### A. Whether Appellee Is A Secured Creditor

■ Ascertaining whether Appellee is a fully secured creditor is important because "[p]re-petition transfers to a creditor that is fully secured on the petition date are generally not preferential because the secured creditor is entitled to 100 percent of

its claims." *In re Smith's Home Furnishings, Inc.,* 265 F.3d 959, 964 (9th Cir.2001). New York Uniform Commercial Code section 9–305 governs the perfection of a security interest by possession.[2] As the Trustee argued to the Bankruptcy Court, section 9–305 provides that "[a] security interest is perfected by possession from the time possession is taken ... and continues only so long as possession is otherwise retained, unless otherwise specified in this Article."[3]

Appellee denies being an unsecured creditor and contends that he retained his security interest even after he relinquished the collateral. However, the Trustee presented evidence and law from which the Bankruptcy Court could have determined that Appellee was not a fully secured creditor on the petition date. For example, in the stipulation of facts, the parties agreed that Appellee returned the diamond ring to Debtors on or about October 15, 1999. By relinquishing possession of the collateral, Appellee may also have relinquished his status as a fully secured creditor. *See* N.Y. U.C.C. § 9–315. It is unclear what, if any, consideration the Bankruptcy Court gave to these facts in the record, their applicability to New York's secured transactions law (N.Y.U.C.C. Art. 9), and how the analysis may be affected, if at all, by Art. 5 of the New York's General Business Law, which applies to collateral loan brokers.

### B. Whether The Alleged Transfer to Appellee Enabled Him To Receive More Than He Would Have In A Chapter 7 Distribution

■ It must be assumed, *arguendo*, that Appellee was not a fully secured creditor

2. There is nothing in the record suggesting that Debtors and Appellee entered into a security agreement.

3. Under N.Y. U.C.C. §§ 9–304(4) and 9–304(5) there are delineated situations, not applicable here, where a security interest may continue as temporarily perfected for twenty-one days after possession ceases.

at the time Debtors filed their bankruptcy petition in order to determine whether the transfer enabled Appellee to receive more than he would have in a Chapter 7 distribution. He received one hundred cents on the dollar. It must then be determined whether other unsecured creditors would have received less than one hundred cents on the dollar in a Chapter 7 distribution. *See Lease–A–Fleet, Inc. v. Wolk,* 151 B.R. 341, 349 (Bankr.E.D.Pa.1993).

There is a paucity of evidence in the record regarding what share Appellee would have taken in a Chapter 7 distribution. There is, however, evidence in the record that could support a finding that the pre-petition payment to Appellee enabled him to receive what would have been a disproportionate share in a Chapter 7 distribution as opposed to other unsecured creditors. First, 11 U.S.C. § 547(f) provides that "[f]or the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." *See Gasmark Ltd. Liquidating Trust v. Louis Dreyfus,* 158 F.3d 312, 315 (5th Cir.1998); *In re Roblin Indus., Inc.,* 78 F.3d at 34. Second, the parties stipulated that Debtors were insolvent as of March 15, 2000, approximately two months before Debtors filed for bankruptcy protection. Third, the summary of schedules lists $116,490.85 in liabilities (of which $81,998.79 is owed to unsecured, nonpriority creditors) and $6,675.00 in assets, much of which was claimed as exempt. Together, this could comprise sufficient evidence that, on the date the Chapter 7 petition was filed, Debtors had insufficient assets to cover their liabilities.[4] If Debtors had insufficient assets to cover their liabilities, then their unsecured creditors would not re-

ceive one hundred cents on the dollar in a Chapter 7 liquidation and any payments to them during the preference period would be avoidable. *See, e.g., Matter of Vitreous Steel Prods. Co.,* 911 F.2d 1223, 1235 (7th Cir.1990); William L. Norton, Jr., 3 Norton Bankr.L. & Prac.2d § 57:9 (2002) ("The Code § 547(b)(5) requirement often mirrors the insolvency test of § 547(b)(3). 'If a debtor's liabilities exceed its assets, an unsecured creditor is sure to receive less than it received in recovering the one hundred percent payment of its claim through the payment of the transfer alleged to be preferential.'") (quoting *Lease–A–Fleet, Inc. v. Morse Operations, Inc.,* 141 B.R. 853, 861 (Bankr.E.D.Pa. 1992)). It is unclear whether the Bankruptcy Court considered this evidence.

### C. *Whether the Payment to Appellee Was Made During The Preference Period*

Debtors also raise the issue of whether the payment to Appellee was made within the ninety day preference period set forth in 11 U.S.C. § 547(b)(4)(A). Because the Bankruptcy Court held that the Trustee failed to carry his burden of establishing the fifth element of his claim under § 547(b), it determined that it need not decide this issue. If necessary, this issue is best resolved by the Bankruptcy Court in the first instance.

### V. *CONCLUSION*

It is unclear from the Bankruptcy Court's November 15, 2001, Memorandum, Decision & Order whether it considered all the facts and the applicable New York State law to determine whether Appellee was a secured creditor. It is similarly unclear whether the Bankruptcy Court considered all the evidence in the record to

---

4. *See, e.g., Precision Walls, Inc. v. Crampton,* 196 B.R. 299, 303 (E.D.N.C.1996) (and cases cited therein); *In re Lan Yik Foods Corp.,* 185 B.R. 103, 108–109 (Bankr.E.D.N.Y.1995).

determine whether the pre-petition transfer to Appellee enabled him to receive more than he would have in a Chapter 7 distribution. Finally, the Bankruptcy Court did not rule on whether the payment was made during the 90 day preference period.

Accordingly, it is

ORDERED that

1. The November 15, 2001, Memorandum, Decision & Order of the Bankruptcy Court is VACATED; and

2. This matter is REMANDED to the Bankruptcy Court for further proceedings in accordance with this opinion.

IT IS SO ORDERED.